**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Bickler, et al., | No. CV-09-00726-PHX-DGC |
| Plaintiffs, | **ORDER** |
| vs. | |
| Senior Lifestyle Corp., | |
| Defendant. | |

Defendant operates an assisted living home and skilled nursing center known as Fountain View Village. In this diversity case, Plaintiffs assert negligence, medical malpractice, and other claims against Defendant for injuries suffered by Charlotte Bickler and Thelma Raymond while in the care of Defendant. Dkt. #1-2. Plaintiffs claim that Ms. Bickler and Ms. Raymond were pushed to the ground and injured by another resident of the facility, referred to in this litigation as "BW," due to negligence and improper supervision by Defendant. *Id.*

Shortly after the incident in which Ms. Bickler and Ms. Raymond were injured, Defendant conducted an investigation. The investigation was undertaken at the direction of in-house counsel and was performed by Christa Bowman of Defendant's human resources department, under the direction of Terry Troxell, executive director of the nursing home. Eighteen employees were contacted during the investigation. The employees responded to questions posed during interviews, with their answers being summarized on a form that included the questions. Each employee also provided a written statement. A short summary

of the interviews and a time-line of relevant events were created. Ms. Troxell then prepared a document and forwarded it and the other materials to in-house counsel. Dkt. #124-1 at 2-5.

Plaintiffs ask the Court to compel production of all of the investigative documents. Dkt. #117. Defendant has responded (Dkt. #124) and Plaintiffs have replied. Dkt. #125. For the following reasons, the Court will grant the motion in part and deny it in part.

**I.     Attorney-Client Privilege.**

Because Arizona law provides the rule of decision in this diversity case, privilege issues must be decided under Arizona law. *See* Fed. R. Evid. 501; *Star Editorial, Inc. v. U.S. Dist. Court for the Cent. Dist. of Cal.*, 7 F.3d 856, 859 (9th Cir. 1993). The Arizona attorney-client privilege for corporations in civil actions is found in A.R.S. § 12-2234(B). The statute protects communications "between an attorney for a corporation" and "any employee, agent, or member" of the corporation. A.R.S. § 12-2234(B).

**A.     Are the Investigative Documents Privileged?**

Of the materials described above, the only document that constitutes a communication with an attorney is Ms. Troxell's document addressed to in-house counsel. All other documents constitute communications between employees and Ms. Bowman, or Ms. Bowman and Ms. Troxell. Those communications were not "between an attorney" and an employee of the corporation and therefore do not fall within the specific language of the statute. Defendant has cited no Arizona authority suggesting that communications with a fellow employee who is not a lawyer fall within the statute. Defendant does cite *Upjohn Co. v. United States*, 449 U.S. 383 (1981), but the interviews in *Upjohn* were conducted by lawyers. *Id.* at 386.

The party asserting the existence of a privilege has the burden of establishing it. *State ex rel. Corbin v. Weaver*, 680 P.2d 833, 839 (Ariz. App. 1984). Courts have held that when a party seeks to cloak third-person communications with the attorney-client privilege, the proponent of the privilege must show with "reasonable certainty" that the privilege applies. *F.T.C. v. TRW, Inc.*, 628 F.2d 207, 213 (D.C. Cir. 1980). Defendant has cited no Arizona authority showing that § 12-2234(B) applies to communications with fellow non-lawyer

employees, and has cited no authority from other jurisdictions in support of that argument. Defendant therefore has not shown that the written communications in question – other than Ms. Troxell's document addressed to in-house counsel – are privileged under the statute.

### B. Was the Privileged Waived?

Plaintiffs contend that even Ms. Troxell's communication lost its privilege when Defendant shared the investigative materials with the Arizona Department of Health Services ("DHS"). The Court does not agree. In *Danielson v. Superior Court*, 754 P.2d 1145 (Ariz. App. 1987), the Arizona Court of Appeals declined to follow the blanket rule that a privilege is waived when privileged materials are shared with a governmental entity. *Id*. at 1147-48 & n.2. *Danielson* held that the physician-patient privilege was not lost when medical information was shared with the Arizona Board of Medical Examiners ("BOMEX"). The Court of Appeals noted that Arizona policy, as reflected in Arizona statutes, clearly favored full communication with this governmental entity:

> In short, the legislature has devised a statutory system which encourages cooperation with and full disclosure to BOMEX during an investigation. In order to remain faithful to this legislative intent, there can be no implied waiver of the physician-patient privilege where medical records are voluntarily released to BOMEX. In such a situation, a later assertion of the privilege is consistent with the rationale underlying the doctrine of physician-patient privilege. Accordingly, we hold that a physician's voluntary release of alcohol treatment center records to BOMEX pursuant to an investigation does not constitute a waiver of the physician/patient privilege.

*Id*. at 1152.

Although *Danielson* concerned the physician-patient privilege, the Court of Appeals specifically noted that analysis of that privilege was similar to analysis of the attorney-client privilege. Indeed, *Danielson* relied almost entirely on attorney-client privilege cases for its decision. *Id*. at 1147-48.

Arizona law empowers DHS to license, regulate, and discipline health care institutions. A.R.S. § 36-401, et seq. DHS is required to investigate allegations of improper conduct or poor patient care. A.R.S. § 36-409. DHS is obligated to enforce the rules and regulations relating to health care facilities, §36-406(1)(a), and may obtain access to "books, records, accounts and any other information of any health care institution," § 36-406(1)(c).

Because the policy of Arizona, as reflected in these statutes, favors full disclosure to DHS, the Court concludes, under *Danielson*, that Defendant's disclosure of Ms. Troxell's privileged communication to DHS did not waive the privilege.

**II.     Work Product Doctrine.**

Unlike the attorney-client privilege, federal law governs the application of the work product doctrine in this case. *First Pac. Networks, Inc. v. Atl. Mut. Ins. Co.*, 163 F.R.D. 574, 577 (N.D. Cal. 1995); *Great Am. Surplus Lines Ins. Co. v. Ace Oil Co.*, 120 F.R.D. 533, 539 (E.D. Cal. 1988); *Connolly Data Sys., Inc. v. Victor Techs., Inc.*, 114 F.R.D. 89, 95 (S.D. Cal. 1987); *R.R. Salvage of Conn., Inc. v. Japan Freight Consolidators (U.S.A.) Inc.*, 97 F.R.D. 37, 40 (E.D.N.Y. 1983).

### A.     Does Work Product Protection Apply?

Pursuant to Federal Rule of Civil Procedure 26(b)(3), documents prepared in anticipation of litigation or for trial are protected as attorney work product. This includes documents prepared by a party or its representative, including the party's agent. *See* Fed. R. Civ. P. 26(b)(3)(A) (protection extends to documents prepared "by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)"). Thus, work product protection extends to materials created by Ms. Troxell and Ms. Bowman, as agents for Defendant.

Plaintiffs contend that the investigation was not undertaken in anticipation of litigation. The Court does not agree. From virtually the moment of the incident in this case, members of Ms. Bickler's family created the prospect of litigation. Ms. Bickler's son arrived at the facility and told staff that his mother could die from a broken hip. That same night he demanded that a sheriff's deputy arrest and charge BW with a crime. Two days later, Ms. Troxell met with three members of the Bickler family and they appeared angry. Ms. Bickler's son claimed in a letter, two days later, than an "assault" had occurred. In light of these events, Ms. Troxell feared Defendant would be sued. Dkt. #124-1 at 2-5.

Litigation need not be a certainty for work product protection to arise. Documents are created in anticipation of litigation if, "'in light of the nature of the document and the factual

situation in the particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation.'" *In re Grand Jury Subpoena*, 357 F.3d 900, 907 (9th Cir. 2004) (quoting 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice & Procedure § 2024 (2d ed. 1994)). In this case, Ms. Troxell has avowed that the investigation was undertaken at the direction of in-house counsel and because she and Defendant feared a lawsuit. Once Ms. Bickler and Ms. Raymond were injured and the family began to ask questions, demand arrests, and refer to the incident as an assault, the prospect of litigation existed. The Court thus concludes that all of the documents created under the direction of Ms. Troxell and Ms. Bowman constitute work product.[1]

Plaintiffs contend that the investigation was conducted in the ordinary course of Defendant's business, and not in anticipation of litigation. Ms. Troxell's affidavit shows otherwise. She talked to corporate counsel twice about the incident, he instructed her to undertake the investigation, and the investigation was more extensive than inquiries routinely made after incidents at the nursing home. Dkt. #124-1 at 2-3. Evidence cited by Plaintiffs does not contradict these assertions.[2]

**B.  Was Work Product Protection Waived?**

Plaintiffs contend that any work product protection was waived when Defendant produced the investigation results to DHS. The majority view among federal cases, however,

---

[1] The work product doctrine extends to questionnaires, witness statements and other documents like those created in this case. *See* 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice & Procedure § 2024.

[2] Plaintiffs contend that Defendant is attempting to use the work product as both a sword and a shield, using Ms. Troxell and Ms. Bowman to testify that the investigation revealed no wrongdoing while withholding the details of the investigation. Defendant has not stated that it intends to use Ms. Troxell and Ms. Bowman in this manner, and in fact has stated that it does not intend to use the investigation in any manner in this case. Dkt. #124 at 3. If Defendant attempts to use the investigation as evidence, Plaintiffs will be free to file a motion *in limine* or object.

is that the disclosure of work product to a government agency does not constitute a waiver.[3] This is because work product protection does not turn on the same confidentiality considerations as the attorney-client privilege:

> The work product privilege is very different from the attorney-client privilege. The attorney-client privilege exists to protect confidential communications and to protect the attorney-client relationship and is waived by disclosure of confidential communications to third parties. The work product privilege, however, does not exist to protect a confidential relationship but to promote the adversary system by safeguarding the fruits of an attorney's trial preparations from the discovery attempts of an opponent.

*Shields v. Sturm, Ruger & Co.*, 864 F.2d 379, 382 (5th Cir. 1989); *see also* 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice & Procedure § 2024 at 368. Because work product protects against disclosure to potential adversaries and not the world in general, courts generally hold that the protection is not lost when work product is disclosed to a government agency. *See Shields*, 864 F.2d at 382; *Goff v. Harrah's Operating Co.,* 240 F.R.D. 659, 661 (D. Nev. 2007); *Niagra Mohawk Power Corp. v. Stone & Webster Eng'g Corp.*, 125 F.R.D. 578, 587, 590 (N.D.N.Y. 1989).

Courts have recognized that work product protection may be lost when the disclosure substantially increases the opportunity for potential adversaries to obtain the information, but they also "have been willing to preserve the work product protection over documents in circumstances where the disclosure to a potential adversary was compelled." *Niagra*, 125 F.R.D. at 587 (citation omitted). For example, in *Transamerica Computer Co. v. International Business Machines Corp.*, 573 F.2d 646 (9th Cir.1978), this circuit held that work product protection was not lost when disclosure had been made under "de facto compulsion" due to "the imposition of an extremely rigorous schedule for discovery" in

---

[3] The Court looks to federal cases generally because the work product inquiry is governed by federal law, not Arizona law and the *Danielson* case. The Ninth Circuit has established no counterpart to *Danielson*. Whether a corporation's disclosure of an internal investigation to a government agency constitutes a waiver of the attorney-client privilege remains an open question in this circuit. *See United States v. Bergonzi*, 403 F.3d 1048, 1050 (9th Cir. 2005); *see also Bittaker v. Woodford*, 331 F.3d 715, 720 n. 5 (9th Cir. 2003) (en banc).

earlier litigation. 573 F.2d at 651; *see also Simpson v. Braider*, 104 F.R.D. 512, 522-23 (D.D.C. 1985) (involuntary disclosure did not waive work product).

In this case, the Court cannot conclude that disclosure of the investigative materials to DHS substantially increased the likelihood of their disclosure to Plaintiffs. More importantly, DHS regulates Defendant. DHS has statutory authority to license, investigate, and discipline Defendant. Given this relationship, the Court concludes that Defendant's production of information to DHS did not constitute a waiver of work product protection. *Transamerica*, 573 F.2d at 651.[4]

### C. Have Plaintiffs Shown Substantial Need and Undue Hardship?

Even if full work product protection applies, Plaintiffs contend that they should be granted access to the investigation because they have "substantial need for the materials" and "cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii). The Advisory Committee Note to Rule 26 makes clear, however, that a "special showing" must be made to satisfy this requirement. Fed. R. Civ. P. 26(b)(3) advisory committee's note (1970). The special showing may be made with respect to witness statements where the witness has given a contemporaneous account of the events at issue and suffers from a lapse of memory later in the litigation. *Id*.

Plaintiffs have made such a showing with respect to Suzie Ofahengaue. Ms. Ofahengaue was nearby when the incident occurred, and she provided a witness statement and answered questions during the investigation. Plaintiffs have provided excerpts from her deposition showing some loss of memory. Dkt. #117-1 at 25-29. The Court concludes that Plaintiffs have shown a substantial need for Ms. Ofahengaue's witness statement and her

---

[4] In 2008, Congress enacted Federal Rule of Evidence 502, which specifically deals with waivers of the attorney-client privilege and work product. Although the rule addresses the *scope* of a waiver when materials are disclosed to a federal agency, it does not decide whether waiver occurs. As the Explanatory Note makes clear, "the rule does not purport to supplant applicable waiver doctrine generally." Fed. R. Evid. 502 explanatory note. Because the new rule does not address disclosures to state agencies like DHS and does not create new law on when waiver occurs, the Court has looked to case law to determine the effect of Defendant's disclosure of the investigation to DHS.

answers to questions, and cannot obtain the substantial equivalent by other means. The Court will require Defendant to produce to Plaintiffs Ms. Ofahengaue's witness statement and her answers to questions.

Plaintiffs have not made this showing with respect to any other witness. They do not identify other witnesses as lacking information. Their general assertion that more information will be revealed by disclosure of the full investigative report is not sufficient to make the special showing necessary to overcome the protection of work product.

Plaintiffs contend that Communication Notes and Incident Reports created in the normal course of Defendant's business are missing from Defendant's records. If the investigation materials include Communication Notes or Incident Reports that were created in the normal course of business, those documents do not become protected work product merely because they have been included in an investigative report. Defendant will be required to produce any Communication Notes or Incident Report contained in the investigation materials.

Plaintiffs make other general arguments regarding their need for information. For example, Plaintiffs assert that they learned of other incidents involving BW through depositions. They speculate that additional incidents may be reflected in the investigation. They also note that the investigation may contain information concerning the behavior and cognition of BW. Such generalized assertions do not constitute the "special showing" needed to overcome work product protection.

**III.  Defendant's Alleged Non-Disclosure.**

Plaintiffs argue that the investigation materials should have been identified as documents withheld from discovery pursuant to Rule 26(b)(5), and that Plaintiff's failure to comply with this rule makes the documents subject to production. Rule 26(b)(5) requires the identification of information withheld from discovery. Defendant correctly notes that it was not obligated to disclose the existence of the investigative documents under Rule 26(a) because that rule applies only to documents the party "may use to support its claims or defenses." Fed. R. Civ. P. 26(a)(1)(A)(ii). Defendant asserts that it has no intention of using

1  the investigation to support its claims or defenses.  In addition, Plaintiffs have identified no
2  Rule 34 request that called for production of the investigative documents.  In the absence of
3  an obligation to produce the documents pursuant to Rule 26(a) or some other discovery
4  request, Defendant did not have an obligation to identify the documents under Rule 26(b)(5).

5  Finally, the Court notes that Plaintiffs have had reason to know about the investigation
6  from the outset of this dispute.  Ms. Troxell informed Ms. Bickler's son that an investigation
7  had been conducted.  Dkt. #124-1 at 4.  The son wrote a letter on January 17, 2009, thanking
8  Ms. Troxell for conducting the investigation.  *Id*. at 7.  Defendant's in-house counsel wrote
9  to the son on January 23, 2009, and stated that an investigation had been conducted.  *Id*. at
10  5.  The son, David Bickler, M.D., is the lead Plaintiff in this case.  Clearly, Plaintiffs have
11  known about the existence of the investigation since shortly after the incident occurred.
12  They could have sought discovery of the investigative materials long before the investigation
13  was discussed by Ms. Troxell in her deposition in January of 2010.

14  The Court concludes that Defendant did not improperly fail to disclose the existence
15  of the investigation.  The attorney-client privilege and work product protection accorded the
16  investigation have not been lost on this basis.

17  **IT IS ORDERED** that Plaintiffs' motion to compel (Dkt. #117) is granted with
18  respect to the witness statement, questions, and question answers of Suzie Ofahengaue, and
19  with respect to any Communication Notes and Incident Reports contained in the investigation
20  materials.  The motion is denied in all other respects.

21  DATED this 4th day of March, 2010.

_____
David G. Campbell
United States District Judge