**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Bickler, et al., | ) | No. CV-09-00726-PHX-DGC |
| Plaintiffs, | ) ) | **ORDER** |
| vs. | ) ) | |
| Senior Lifestyle Corp., | ) ) | |
| Defendant. | ) ) | |
| | ) | |

Defendant Senior Lifestyle Corporation has filed a motion for summary judgment. Dkt. #133. Plaintiffs oppose the motion. Dkt. #141. Defendant has also filed a motion to strike many of Plaintiffs' statements of fact and many of Plaintiffs' responses to Defendant's statements of fact. Dkt. #154. For reasons that follow, the Court will grant in part and deny in part the motion for summary judgment (Dkt. #133) and will deny the motion to strike (Dkt. #154) as moot.[1]

**I.     Background.**

Charlotte Bickler and Thelma Raymond were residents at Fountain View Village, a residential assisted living and nursing community run by Defendant. Plaintiffs in this case are Ms. Bickler, three of Ms. Bickler's sons, Ms. Raymond, and Ms. Raymond's son. They claim that on December 25, 2008, Ms. Bickler and Ms. Raymond were pushed to the ground and injured by another resident of the facility, referred to in this litigation as "BW."

---

[1]Plaintiffs' request for oral argument is denied. The parties have fully briefed the issues and oral argument will not aid the Court's decision. *See Lake at Las Vegas Investors Group, Inc. v. Pac. Malibu Dev. Corp.*, 933 F.2d 724, 729 (9th Cir. 1991).

1  Plaintiffs contend that this assault by BW was due to negligence and improper supervision

2  by Defendant.  Dkt. #1-2.

3          Plaintiffs brought this action against Defendant in Maricopa County Superior Court.

4  Defendant removed the case to this Court on the basis of diversity jurisdiction.  Dkt. #1.

5  Currently, there are four Claims pending against Defendant: (1) a vulnerable adult claim

6  pursuant to A.R.S. § 46-451, et seq. (Claim One), (2) a negligence claim (Claim Two), (3)

7  a medical malpractice claim (Claim Three), and (4) a claim for negligent infliction of

8  emotional distress (Claim Four).  Dkt. #1-2.  Plaintiffs have also requested damages for loss

9  of consortium.  Dkt. #1-2.  Defendant has moved for summary judgment on all claims and

10  has also made generalized objections to the following paragraphs in Plaintiffs' statement of

11  facts ("PSOF") and response to Defendant's statement of fact ("PRSOF"): PRSOF ¶¶ 3-5,

12  21, 26, 33, 35-37, 42-43, 45, 47-48, 66, 69, 70, 72-73, 77, 82, 84-85, 90, 92-94, 96-99, 101-

13  02, 104, 106-08, 110, 114, 117, 118, 121-24, 129, 137, 139, 140-41, 143, 145, 152-53, 159-

14  61, 164-65, 168, 170, 175, 178, 181, 184, 185-86, 188-89, 197-98, 208, 210-11, 217-23, 225-

15  26; PSOF ¶¶ 1, 6-67, 69-72, 74-76, 81-82, 97, 108, 112-13, 118, 122, 127-28.  Dkt. #133.

16  **II.    Legal Standard.**

17          A party seeking summary judgment "bears the initial responsibility of informing the

18  district court of the basis for its motion, and identifying those portions of [the record] which

19  it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v.*

20  *Catrett*, 477 U.S. 317, 323 (1986).  Summary judgment is appropriate if the evidence, viewed

21  in the light most favorable to the nonmoving party, shows "that there is no genuine issue as

22  to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R.

23  Civ. P. 56(c)(2).  District courts in this circuit must consider even inadmissible evidence at

24  the summary judgment stage unless a party has moved to strike the evidence or has otherwise

25  objected to it.  *See Pfingston v. Ronan Eng'g Co.* 284 F.3d 999, 1003 (9th Cir. 2002).

26  **III.   Analysis.**

27          Defendant makes several arguments as to why it is entitled to summary judgment on

28  all claims.  First, Defendant argues that Claims One, Two, and Three are effectively identical

under Arizona law and should be treated as a single claim premised on malpractice pursuant to A.R.S. § 12-561. Defendant then argues that this combined single claim must fail because one of Plaintiffs' expert witnesses does not meet the Arizona requirement to testify on the standard of care in a malpractice case, one of Plaintiffs' expert witnesses did not base her expert opinion on facts, and many of the allegedly negligent acts of Defendant did not cause Plaintiffs' injuries. Second, Defendant argues that any claim that anesthesia caused harm to Ms. Bickler must fail because there is no reliable scientific evidence to support such a claim. Third, Defendant argues that the Court should enter summary judgment on all economic damages because Plaintiffs have not disclosed an expert who will testify as to the present value of future damages, or an expert who will testify that the past medical expenses were causally related to the December 25, 2008 fall of Ms. Bickler and Ms. Raymond. Fourth, Defendant argues that the Court should enter summary judgment on Claim Four, the negligent infliction of emotional distress claim. Plaintiffs concede this point in their response. Dkt. #141 at 1. Fifth, Defendant argues that Plaintiffs do not have a valid claim for loss of consortium. Sixth, Defendant argues that summary judgment is warranted on the issue of punitive damages.

### A. Claims One, Two, and Three.

Defendant argues that Claims One, Two, and Three should be treated as one identical claim – a medical malpractice under A.R.S. § 12-561. Under A.R.S. § 12-561(2), a medical malpractice action is "an action for injury or death against a licensed health care provider based upon such provider's alleged negligence[.]" Defendant contends that this statute is broad enough to cover Claim One, which alleges neglect by Defendant of a vulnerable adult pursuant to A.R.S. § 46-451, and Claim Two, which is a general common-law negligence claim.

Defendant provides no Arizona authority showing that these three claims cannot stand as individual claims. Indeed, the Arizona Supreme Court has made clear that an action for abuse of a vulnerable adult pursuant to A.R.S. § 46-451 can be maintained separately from an action for medical malpractice pursuant to A.R.S. § 12-561. *See Estate of McGill v.*

1    *Albrecht*, 57 P.3d 384, 390 (Ariz. 2002). As a result, the Court cannot find that Claims One

2    and Three are identical.

3       As to Claim Two, courts in Arizona have held that a common-law negligence action

4    can be maintained separately from a medical malpractice action brought pursuant to A.R.S.

5    § 12-561 if the alleged "negligent acts [] have nothing to do with the rendering of medical

6    or health care-related services." *Jeter v. Mayo Clinic Arizona*, 121 P.3d 1256, 1274 (Ariz.

7    App. 2005). Defendant argues that Claim Two and Claim Three are both based on

8    negligence in the rendering of medical or health-related services and that, as a result, they

9    must be treated as one medical malpractice claim under A.R.S. § 12-561. But Defendant

10    provides no citations to the record or the complaint showing that Plaintiffs' negligence claim

11    is based solely on Defendant's alleged negligence in rendering medical or health-related

12    services. Because it is not clear to the Court whether Plaintiffs' negligence claim arises out

13    of alleged negligence in the rendering of medical or health-related services, the Court cannot

14    treat Claims Two and Three as a single malpractice claim at this stage in the litigation.

15       Defendant further argues that Claims One, Two, and Three must fail because one of

16    Plaintiffs' expert witnesses does not meet the Arizona requirement to testify on the standard

17    of care in a malpractice case, one of Plaintiffs' expert witnesses did not base her expert

18    opinion on facts, and the alleged negligent acts of Defendant did not cause any of Plaintiffs'

19    injuries. The Court will consider each argument.

20           **1.**      **Requirement to Testify in a Malpractice Case.**

21       Defendant argues that one of Plaintiffs' standard of care experts – Dr. Karl Steinberg

22    – does not meet the Arizona requirements to testify on the standard of care in a malpractice

23    case as set out in A.R.S. § 12-2604. The Court disagrees.[2]

24       Defendant argues that under A.R.S. § 12-2604, "a standard of care expert must meet

25    stringent requirements to offer testimony, including requirements pertaining to the amount

26    of time practicing in the same field, licensure, or teaching." Dkt. #133 at 4. Defendant

27

28       [2] The Court notes that the only malpractice Claim at issue in this litigation is Claim Three. As a result, this argument has no bearing on Claims One and Two.

1  contends that Dr. Steinberg does not meet these stringent requirements because he "is not a

2  licensed manager/administrator of an assisted living facility," he "is not a caregiver in an

3  assisted living facility," he "does not spend a majority of his time providing care as a

4  caregiver or manager in an assisted living facility," and he "does not spend a majority of his

5  time teaching . . . people entering the assisted living field." *Id.* Defendant fails to cite any

6  evidence in the record in support of this argument, nor does it cite any cases that support its

7  conclusion that Dr. Steinberg is not qualified to testify.

8        Relying on his affidavit, Plaintiffs argue that Dr. Steinberg is "the Medical Director

9  of Hospice by the Sea in Solana Beach, CA, Medical Director of a continuing care retirement

10  community, Las Villas de Carlsbad in Carlsbad, CA, and Medical Director of a skilled

11  nursing facility, Village Square Nursing and Rehabilitation Center in San Marcos, CA." Dkt.

12  #141-3 at 14. Thus, according to his affidavit, Dr. Steinberg does practice in the nursing and

13  assisted living field and is the medical director of three such facilities. Defendant's

14  unsupported assertion to the contrary is unpersuasive.[3]

15                   **2.     Expert Opinion Basis in Fact.**

16        Defendant argues that the Court should grant summary judgment on Claims One,

17  Two, and Three because one of Plaintiffs' expert witnesses did not base her expert opinion

18  on facts. Defendant argues that Sylvia Rigsbee, LPN offered numerous opinions that were

19  not supported by the facts in the record. Defendant argues that she "had no evidence" of

20  whether an incident between BW and several caregivers "was an alleged unprovoked

21  incident," whether "it was inappropriate to allow BW to go to the doctor" without her court-

22  appointed power of attorney present, whether the caregivers at Fountain View Village were

23

24

25       [3] Defendant argues that Dr. Steinberg's affidavit is inadmissible pursuant to A.R.S.
§ 12-2603(G) because "[p]reliminary expert affidavit [sic] are not admissible as substantive

26  evidence." Dkt. #154 at 15. This statute, however, merely states that a "preliminary expert
opinion affidavit may be used for impeachment" only in certain circumstances. A.R.S. § 12-

27  2603(G). It does not state that Dr. Steinberg's affidavit is inadmissible. Moreover, Federal
Rule of Civil Procedure 56(e) provides that responses to motions for summary judgment may

28  be supported by an affidavit.

1    adequately trained, whether Fountain View Village misrepresented the type of residents it

2    would keep at the facility, and whether BW's doctor would have provided different treatment

3    had he been provided with BW's medication records from Fountain View Village. Dkt. #133

4    at 5-6.

5            Defendant offers no explanation why Rigsbee's alleged lack of factual support for her

6    expert opinion entitles it to summary judgment on Claims One, Two, and Three. Defendant

7    does not allege that, absent Rigsbee's expert testimony, Plaintiffs will be unable to prove the

8    elements of its claims at trial. Defendant merely asserts there is "no factual basis for a claim

9    of misrepresentation" and that partial summary judgment is warranted "on any claim

10   stemming from whether [Fountain View Village] should have provided all [medication]

11   records" to BW's doctor. Dkt. #133 at 6. It is unclear how these arguments relate to claims

12   in Plaintiffs' complaint. A party seeking summary judgment "bears the initial responsibility

13   of informing the district court of the basis for its motion, and identifying those portions of

14   [the record] which it believes demonstrate the absence of a genuine issue of material fact."

15   *Celotex Corp.*, 477 U.S. at 323. Because Defendant has failed to show the Court why the

16   alleged inadequacy of Rigsbee's proposed testimony would entitle it to summary judgment,

17   the Court will deny Defendant's motion.

18                           **3.      Defendant's Acts Did Not Cause Injury.**

19           Defendant argues that it is entitled to summary judgment because "[n]egligence in the

20   abstract is not actionable," and because Plaintiffs have failed to present evidence that each

21   alleged act of negligence caused injury. Defendant contends that Plaintiffs' case "is riddled

22   with criticisms that are not linked by expert testimony to any cause of an injury" and that, as

23   a result, they cannot support a claim for negligence or malpractice. Dkt. #133 at 7.

24   Defendant goes on to list several of Plaintiffs' criticisms of Fountain View Village's actions

25   that, according to Defendant, did not cause any of Plaintiffs' injuries. *Id.* But Defendant

26   does not explain why it is entitled to summary judgment merely because some of Plaintiffs'

27   criticisms might be irrelevant. Appropriate relevancy objections will eliminate them from

28   the case. Defendant does not contend that Plaintiffs cannot prove that any allegedly

1 negligent act by Defendant caused Plaintiffs' injuries. Instead, Defendant identifies a

2 handful of actions that could not have caused Plaintiffs' injuries. Showing that some of

3 Defendant's actions could not have caused an injury, however, is not the same as showing

4 that no action of Defendant caused the injury. As discussed above, a party seeking summary

5 judgment "bears the initial responsibility of informing the district court of the basis for its

6 motion, and identifying those portions of [the record] which it believes demonstrate the

7 absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. Defendant has

8 failed to meet this burden and, as a result, is not entitled to summary judgment.

9       **B.      Anesthesia.**

10      Ms. Bickler underwent surgery as a result of her injuries and, Plaintiffs allege,

11 suffered an increase in dementia following the surgery. Defendant argues that any claim that

12 the anesthesia administered during the surgery caused harm to Ms. Bickler must fail under

13 *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), because there is no

14 reliable scientific evidence to support such a claim. Plaintiffs respond with testimony from

15 Ms. Bickler's treating neurologist that her exposure to anesthesia affected her dementia, and

16 with studies suggesting that elderly patients show cognitive declines following surgery. Dkt.

17 #141-1 at 40.

18      In December of 2000, Federal Rule of Evidence 702 was amended to codify the

19 gatekeeping requirements of *Daubert*. The Advisory Committee Note to the 2000

20 amendment is instructive:

21          A review of the case law after *Daubert* shows that the rejection of
   expert testimony is the exception rather than the rule. *Daubert* did not work
22 a "seachange over federal evidence law," and "the trial court's role as
   gatekeeper is not intended to serve as a replacement for the adversary system."

23

24 Fed. R. Civ. P. 702 (2000 Adv. Comm. Note) (quoting *United States v. 1.438 Acres of Land*

25 *Situated in Leflore County, Mississippi*, 80 F.3d 1074, 1078 (5th Cir. 1996)). The Advisory

26 Committee further noted that proponents of expert testimony "'do not have to demonstrate

27 to the judge by a preponderance of the evidence that the assessments of their experts are

28 correct, they only have to demonstrate by a preponderance of evidence that their opinions are

1  reliable . . . . The evidentiary requirement of reliability is lower than the merits standard of

2  correctness.'" *Id.* (quoting *In Re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717, 744 (3rd Cir.

3  1994)).  As one court has explained, "[i]n serving its gatekeeping function, the court must

4  be careful not to cross over into the role of factfinder.  It is not the job of the court to insure

5  that the evidence heard by the jury is error-free, but to insure that it is not wholly unreliable."

6  *Southwire Co. v. J.P. Morgan Chase & Co.*, 528 F.Supp.2d 908, 928 (W.D. Wis. 2007).

7         Thus, one notable commentator has observed that the 2000 amendments to Rule 702

8  "were not intended to signal an abandonment of the liberal attitude of the Federal Rules of

9  Evidence toward the admissibility of opinion testimony."  Vol. 4, J. Weinstein & M. Berger,

10  *Weinstein's Federal Evidence,* § 702.05[2][a] (Matthew Bender 2d ed. 2008).  Nor were they

11  intended to suggest that Courts should place less reliance on the traditional tools of the

12  adversary system to uncover the truth.  As the Supreme Court explained in *Daubert*,

13  "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on

14  the burden of proof are the traditional and appropriate means of attacking shaky but

15  admissible evidence."  509 U.S. at 595.

16         The Court concludes that the parties' competing views on the cause of Ms. Bickler's

17  increased dementia must be resolved by the jury.

18         **C.     Economic damages.**

19         Defendant argues that the Court should enter summary judgment on all economic

20  damages because Plaintiffs have not disclosed an expert who will testify as to the present

21  value of future damages, or an expert who will testify that the past medical expenses of Ms.

22  Bickler and Ms. Raymond were causally related to the fall on December 25, 2008. Dkt. #133

23  at 11-12.   But Defendant has provided no authority showing that expert testimony is

24  necessary for an award of future damages.  Indeed, in the case cited by Defendant, *Downs*

25  *v. Sulphur Springs Valley Electric Cooperative, Inc.*, 297 P.2d 339 (Ariz. 1956), there was

26  no expert who testified on how to calculate future damages, but rather "[t]he court . . .

27  instructed the jury" on "how to calculate such present worth."  297 P.2d at 344.

28         The Court also disagrees that it should enter summary judgment on past medical

1  expenses.  Defendant argues that the experts who presumably will testify as to Ms.

2  Raymond's and Ms. Bickler's damages will give problematic testimony, but fails to explain

3  why this entitles Defendant to summary judgment on Plaintiffs' damages claims.  Dkt. #133

4  at 11-12.  Because Defendant has failed adequately to explain why it is entitled to summary

5  judgment, the Court will deny Defendant's motion.  *Celotex Corp.*, 477 U.S. at 323.

6      **D.      Loss of Consortium.**

7      Loss of consortium is "a loss of capacity to exchange love, affection, society,

8  companionship, comfort, care and moral support."  *Pierce v. Casas Adobes Baptist Church*,

9  782 P.2d 1162, 1165 (Ariz. 1989).  A plaintiff may maintain a cause of action for loss of

10 consortium of a parent when that parent "suffers serious, permanent, disabling injury

11 rendering the parent unable to provide love, care, companionship, and guidance to the child."

12 *Villareal v. State, Dep't of Transp.*, 774 P.2d 213, 219 (Ariz. 1989).  The injury does not

13 need to be "the functional equivalent of death or even be categorized as 'catastrophic.'"

14 *Pierce*, 782 P.2d at 1165.  Rather, "[t]he focus of the trial court's inquiry is on the

15 interference with the normal relationship between parent and child."  *Miller v. Westcor Ltd.*

16 *P'ship*, 831 P.2d 386,  395 (Ariz. App. 1991).  "Whether the threshold of a significant

17 interference with the normal relationship between parent and child has been met is a question

18 of law for the judge to determine," but once a judge finds that the person's "injuries are

19 sufficiently severe to warrant a cause of action for loss of consortium, the trier of fact

20 determines the question of recovery or the amount recoverable based on the degree of that

21 interference."  *Pierce*, 782 P.2d at 1165.

22     Defendant argues that the claim by Ms. Raymond's son for loss of consortium is

23 invalid because Ms. Raymond's ability to interact with her son did not change as a result of

24 the fall.  Dkt. #133 at 14.  In response, Plaintiffs argue that the fall caused Ms. Raymond's

25 health and mental state to deteriorate so substantially that Ms. Raymond does not always

26 recognize her son when he visits.  Dkt. #141 at 24-25.

27     Defendant also argues that the claim by Ms. Bickler's son for loss of consortium is

28 invalid because Ms. Bickler can still recognize her sons and because any changes in her

1  behavior were only transitory. Dkt. #133 at 14. In response, Plaintiffs contend that their loss

2  of consortium claim is valid because Ms. Bickler's dementia and confusion have worsened,

3  she requires round-the-clock nursing care, and there has been a profound change in her level

4  of functioning since the incident.

5      Plaintiffs have made a threshold showing of a "significant interference with the

6  normal relationship between parent and child[.]" *Pierce*, 782 P.2d at 1165; *Miller*, 831 P.2d

7  at 395. The question of whether this significant difference is "severe enough to warrant

8  [their] children's loss of consortium claim," or whether this difference was caused by the

9  injuries sustained as a result of the fall on December 25, 2008, is "a question of fact for the

10 jury[.]" *Villareal*, 774 P.2d at 219. The Court will not grant summary judgment on the issue

11 of loss of consortium.

12      **E.    Punitive Damages.**

13      Defendant contends that this is not the sort of case that should give rise to punitive

14 damages because Plaintiffs would have to prove by clear and convincing evidence that

15 Defendant intended to injure Ms. Bickler or Ms. Raymond, acted out of spite or ill will, or

16 acted to serve its own selfish interest. Dkt. #133 at 15. Defendant contends that Plaintiffs

17 can present no such evidence.

18      Plaintiffs argue that there is at least a question of fact as to whether Defendant acted

19 with ill will or an evil mind. Plaintiffs argue that the fact that Defendant continued to allow

20 BW to live in its facility, even though it certainly knew before December 25, 2008 that she

21 was combative and dangerous, shows that Defendant was acting to serve its own financial

22 self interest. Dkt. #141 at 19-20. The Court finds that there is a disputed issue of fact as to

23 whether Defendant acted to serve its own interest. The Court will not grant summary

24 judgment to Defendant on the punitive damages issue.

25 **IV.   Conclusion.**

26      The Court will grant summary judgment to Defendant on Claim Four. Defendant's

27 motion to strike large portions of Plaintiffs' statements of facts and response to Defendant's

28 statement of facts is moot. Dkt. #154. The only evidence to which Defendant objected that

the Court considered for purposes of this motion was the affidavit of Dr. Steinberg which, as the Court discussed above, was proper evidence for Plaintiffs to cite in their response.

**IT IS ORDERED:**

1. Defendant's motion for summary judgment (Dkt. #133) is **granted** as to Claim Four and is **denied** as to all other Claims.

2. Defendant's motion to strike (Dkt. #154) is **denied** as moot.

3. The Court will set a final pretrial conference by separate order.

DATED this 8th day of June, 2010.

David G. Campbell
United States District Judge