**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Bickler, et al., | No. CV-09-00726-PHX-DGC |
| Plaintiffs, | **ORDER** |
| vs. | |
| Senior Lifestyle Corp., | |
| Defendant. | |

Trial in this case will begin on October 26, 2010. The Court held a final conference call with the parties on October 20, 2010. Counsel for Plaintiffs and Defendants participated in the call. The purpose of the call was to discuss any remaining issues in advance of trial.

A few hours before the conference, counsel for Defendants filed a document titled Declaration of Stephen M. Garcia Regarding Trial Readiness. Doc. 246. The declaration noted that SL Fountain View Village, LLC had been added as a Defendant pursuant to the Court's order of October 1, 2010. Doc. 285. The declaration also suggested, however, that the addition of this Defendant had created a conflict of interest for Mr. Garcia and that no Defendant should be required to go to trial on two weeks' notice. This declaration prompted an extended discussion on the record during the final conference. This order will explain the Court's decisions following reflection on that discussion. In order to understand the Court's decisions, some detailed history is required.

**I. Relevant Facts.**

When Plaintiffs filed their initial complaint in this case, they apparently failed to name the correct licensee of Fountain View Village – the nursing facility where Plaintiffs were

1  injured. Plaintiffs named Senior Lifestyle Corporation ("SLC") as Defendant and alleged
2  that it did business as Fountain View Village. Doc. 1. In answering the complaint, SLC
3  admitted that it operated Fountain View Village, "that its facility is licensed by the state of
4  Arizona," and that the services offered by the facility fall within the scope of Arizona's
5  medical malpractice statute. Doc. 7. Plaintiffs reasonably relied on this admission to
6  conclude that they had named the proper defendant in this case. *See* Doc. 190 at 2-3.

7  Later in discovery, Plaintiffs deposed the executive director of Fountain View Village.
8  When asked who held the license for the nursing facility, the executive director responded:
9  "Senior Lifestyle Corporation holds the license." Doc. 187-1 at 19-20. This testimony
10  confirmed that SLC was the proper Defendant in this case.

11  During the remainder of the discovery period, which was extended at the request of
12  the parties, Defendant SLC never withdrew or modified these admissions. To the contrary,
13  SLC's filings in this Court, including its summary judgment motion, continued to make this
14  representation, stating that the filings were made on behalf of "Defendant Senior Lifestyle
15  Corporation d/b/a Fountain View Village." *See*, *e.g.*, Docs. 92, 133. SLC's extensive motion
16  for summary judgment never argued that Plaintiffs had named the wrong Defendant.

17  After the Court denied summary judgment, SLC retained Mr. Garcia and his firm as
18  new counsel. New counsel filed a motion for substitution on June 11, 2010. Doc. 163. The
19  motion stated that new counsel were in possession of the full case file and would assume
20  day-to-day responsibility for the lawsuit. Plaintiffs' counsel promptly started copying new
21  counsel on all pleadings. *See* Doc. 164 *et seq.*

22  In preparation for the final pretrial conference to be held on August 11, 2010, SLC
23  filed a motion in limine which asserted, for the first time, that it was not the licensee of
24  Fountain View Village. Doc. 179. The motion essentially asked the Court to grant victory
25  to SLC by precluding Plaintiffs from presenting any evidence or argument that SLC was the
26  licensee. *Id.* Because SLC had admitted months earlier that it was the licensee and had
27  persisted in the admission throughout this case, the Court concluded that it would be
28  manifestly unfair to pull the rug out from under Plaintiffs at the final pretrial conference and

preclude them from recovering against the only Defendant they had sued. Nor was the Court willing to reopen discovery. The case already had been pending for 16 months and had undergone extensive discovery and motion practice. Plaintiffs are elderly women in poor health. Indeed, Plaintiffs' counsel had urged at the initial case management conference that trial be held as quickly as possible given the advanced ages and precarious condition of Plaintiffs. The Court was not willing to extend the litigation because SLC had led plaintiffs to believe that it was the responsible party and now wanted to change its story. The Court instructed the parties to work out an arrangement whereby the proper Defendants would be present at trial. *See* Doc. 190 at 2-3. Trial was set for September 21, 2010. *Id*.

Almost one month after the final pretrial conference, the parties filed a stipulation to continue the trial date to October 25, 2010. Doc. 203. The extension was sought to accommodate the schedule of lead defense counsel and to permit additional settlement discussions. *Id*.; Doc. 193. The Court granted the parties' request and rescheduled the trial to begin on October 26, 2010. Doc. 213.

Given these developments, the Court was surprised when defense counsel claimed, on September 28, 2010, that an additional four to six months were needed for discovery if the true licensee – SL Fountain View Village, LLC – was brought into the case. Doc. 222. That position had not been taken at the final pretrial conference or in the parties' stipulation to begin trial in late October. During a conference call on September 30, defense counsel asserted that unique issues would be presented by SL Fountain View Village, LLC's presence as a Defendant in the case – issues not presented by SLC. When the Court asked defense counsel to describe these unique issues, counsel responded as follows:

> The licensee has a nondelegable duty. For example, there's a morass of federal regulations. This is the second most regulated field to nuclear power. They have regulations how hot the water is supposed to be in the kitchen and how hot it is supposed to be in the shower. And their defenses as to those regulations would be different than someone who wasn't responsible, only to the extent an expert issue would be – they would be minimal. I mean – now that I'm hearing myself talk, your honor, forget it. I'm sorry. Now that I talked it out in my own brain I cleared it up in my own brain. If the court follows the second of its suggested patterns [adding SL Fountain View Village, LLC as a Defendant], I'll get it done on our side. We'll be ready on the 26th.

1 Court's Livenote Transcript, 9-30-10. Defense counsel then added: "we'll be there with both
2 defendants and me and prepared to go to trial, your honor." *Id*.

3 The Court accordingly entered an order requiring that SL Fountain View Village, LLC
4 be added as a Defendant along with SLC. Doc. 225. The Court was operating with the
5 understanding that SL Fountain View Village, LLC was the owner and licensee of Fountain
6 View Village and that SLC operated the facility under a management agreement. This
7 relationship had been described by defense counsel at the final pretrial conference (Doc. 219
8 at 32) and was confirmed in the Declaration of Stephen Levy, Senior Vice President and
9 General Counsel of SLC (Doc. 222-2). Mr. Levy declared to the Court under penalty of
10 perjury that "the named defendant [SLC] does provide management services to SL Fountain
11 View Village, LLC pursuant to a management agreement[.]" *Id*. ¶ 7.

12 Given these events, the Court was confused and concerned when, on
13 October 20, 2010, it received the Declaration of Stephen M. Garcia Regarding Trial
14 Readiness. Doc. 246. As noted, the declaration confirmed that SL Fountain View Village,
15 LLC had been added as a Defendant pursuant to the Court's order, but suggested that the
16 addition of this Defendant had created a conflict of interest for Mr. Garcia. The Court did
17 not understand how the two entities – SLC and SL Fountain View Village, LLC – would
18 have differing interests at trial, particularly in light of the statement of Mr. Garcia quoted
19 above. The Court accordingly sent out a text-only order that required defense counsel to be
20 prepared at the final conference that afternoon to describe in detail the relationship between
21 SLC and SL Fountain View Village, LLC. Doc. 249.

22 What the Court heard at the final conference was even more surprising. Contrary to
23 prior representations and the statement given under penalty of perjury by SLC's general
24 counsel, defense counsel asserted at the conference that SLC does not have a management
25 agreement with SL Fountain View Village, LLC and, in fact, has no relationship with the
26 nursing facility at all. Indeed, counsel stated that SLC is nothing more than a shell
27 corporation and that the management agreement for the facility was with Senior Lifestyle
28 Management, LLC, a previously unnamed entity in this litigation. Counsel said Senior

1 Lifestyle Management, LLC is the parent of SL Fountain View Village, LLC and SLC.
2 Counsel further changed the facts by stating that SL Fountain View Village, LLC does not
3 own the nursing facility – it is owned by WSL Fountain View Investors V, LLC, another
4 previously unnamed entity within this ever growing family of companies. Counsel said that
5 WSL leases the facility to SL Fountain View Village, LLC. Counsel said that all of these
6 companies are for the most part owned by the same group of investors, that Mr. Levy is one
7 of the owners, and that Mr. Levy is general counsel for SLC, SL Fountain View Village,
8 LLC, and Senior Lifestyle Management, LLC.

9       The Court asked defense counsel several times during the conference how the defense
10 of these entities would be any different at trial than the defense prepared by SLC. The only
11 explanation counsel could provide was that the other entities would have handled the
12 discovery and litigation strategy differently than did SLC, an explanation that made no sense
13 given that Mr. Levy is the general counsel of all these entities, including SLC, the Defendant
14 that did litigate this case. Moreover, counsel said that the nursing facility, Fountain View
15 Village, was covered by a $1 million insurance policy and that the insurance company had
16 selected the initial counsel. When asked who were the beneficiaries of the policy, counsel
17 said all of these entities were. Thus, even if Plaintiffs had named SL Fountain View Village,
18 LLC and Senior Lifestyle Management, LLC in the original complaint, the defense
19 presumably still would have been provided under the insurance policy and defense counsel
20 still would have been selected by the insurer. In any event, general counsel for the
21 beneficiaries of the policy surely had the right and at least $1 million worth of incentive to
22 watch the defense of this case closely and approve representations made by counsel,
23 including the admission that SLC was the licensee and operator of the facility.

24       In short, defense counsel was unable to identify anything that would be different at
25 trial if the correct defendants were named. The trial would still focus on whether Plaintiffs
26 received proper care at the nursing facility, whether they were injured through the aggressive
27 actions of another resident who either should have been controlled by the facility staff or
28 should never have been admitted to the facility, the extent and nature of their injuries, and

whether punitive damages are warranted. Defense counsel has not identified a credible difference between the defense that has been prepared for SLC and the defense for the correct owners and operators of Fountain View Village.

Defense counsel made another suggestion that is troubling. He said that SL Fountain View Village, LLC intends to "point the finger" at SLC during the trial, knowing that any judgment obtained against that shell corporation would be non-collectable. In other words, Defendant SL Fountain View Village, LLC still hopes to win this case because Plaintiffs reasonably relied on the admission that SLC was the correct Defendant. Defendant SL Fountain View Village, LLC also intends to argue that SLC is the responsible entity despite its representations to the Court on October 20, 2010, that SLC has nothing to do with the nursing facility. Such disingenuous gamesmanship cannot be tolerated by courts of civil justice.

The Court also has reason to doubt the representations made by counsel during the hearing on October 20, 2010. As noted above, Stephen Levy stated under penalty of perjury that SLC had a management agreement with SL Fountain View Village, LLC. In addition, information available on the Internet suggests that SLC is not a mere shell corporation. The website www.seniorlifestyle.com is copyrighted by SLC. It is an extensive website concerning the business of SLC and states that the corporation has created premier residential communities since 1985. *See* http://www.seniorlifestyle.com/ about-us/about-us-landing (last visited 10/21/10). The website has a section titled "Management Services," which states that SLC "has built a proven record of operating retirement communities with sound fiscal management and a capable, caring staff" – suggesting that SLC in fact is in the business of managing entities like Fountain View Village. *See* http://www.seniorlifestyle.com/ management-services/management-services-landing-page (last visited 10/21/10). The website contains information about SLC's senior management, including a Chairman, CEO, Executive Vice President, CFO, COO, General Counsel, four other Vice Presidents, and other employees – hardly the description of an inactive shell corporation. This information and the sworn declaration of Mr. Levy contradict counsel's assertion that SLC is merely a

1  shell that has no relationship with the nursing facility in this case.

2  All of these facts notwithstanding, the Court is also concerned about the due process
3  implications of requiring SL Fountain View Village, LLC and Senior Lifestyle Management,
4  LLC to go to trial on short notice. Counsel has been unable to articulate a difference between
5  their defense and the defense of SLC at trial, but a defendant typically is allowed to develop
6  its own defenses even if it is the same as another defendant's.

7  **II.    Where do we go from here?**

8  Trial starts in three business days. For reasons discussed above, the Court will not
9  postpone the trial. After considerable thought, the Court has settled on the following
10 approach to trial:

11 1. Plaintiffs will be permitted to amend the complaint before trial to add Senior
12 Lifestyle Management, LLC or any other related entity as a Defendant, provided Plaintiffs
13 have a Rule 11 basis for doing so. Service should be completed by normal procedures.

14 2. The claims against SL Fountain View Village, LLC and any other new
15 Defendant will be stayed. Trial will proceed against SLC. SLC will be held at trial to its
16 longstanding admission that it is the operator and licensee of Fountain View Village. SLC
17 will not be permitted to deny this admission at trial or present evidence or argument contrary
18 to this admission.

19 3. If Plaintiffs prevail at trial and conclude that they cannot collect against SLC,
20 the Court will entertain a post-trial motion for summary judgment against the stayed
21 Defendants based on *res judicata* or similar doctrines. If Plaintiffs do not prevail, the Court
22 will entertain a similar motion from the stayed Defendants. The Court has not decided how
23 it will rule on such motions, but they present the possibility that a second trial will not be
24 needed. If the Court denies such a motion, it will then address how to resolve the remaining
25 claims against the remaining parties.

26 4. Because SLC will be the only Defendant at trial, defense counsel's conflict of
27 interest concerns will be allayed.

28 5. The Court is concerned about the contradictory representations made by

1  defense counsel in the last few hearings, particularly the direct contradiction between defense
2  counsel's adamant assertion that SLC is a shell corporation that does not have a management
3  agreement with SL Fountain View Village, LLC on one hand, and Mr. Levy's declaration
4  under penalty of perjury that it does have such an agreement, along with the website's clear
5  statement that SLC provides management services, on the other hand.  The Court will
6  address these concerns after trial.

DATED this 22nd day of October, 2010.

*/s/ Daniel G. Campbell*
_____
David G. Campbell
United States District Judge